

FILED by _____ D.C.

JUL 1 7 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION

GEORGINA DE LEON, MANUEL LOPEZ,
AIDA FLORES, and AIDA VILLARTA,

       Plaintiffs,

v.

HIALEAH HOUSING AUTHORITY, ALEX
MORALES, JULIO PONCE, ALICIA PEREZ,
JOSE LUIS PANIAGUA, BENJAMIN ALVAREZ,
and ANA WYDRA,

       Defendants.

_____/

Case No.

# 09 - 22087
## CIV - GOLD

[ McALILEY ]

## COMPLAINT

**and**

## JURY DEMAND

    Plaintiffs, Georgina De Leon, Aida Flores, Aida Villarta, and Manual Lopez, by and through

their undersigned attorneys, file this Complaint for injunctive and declaratory relief, damages, costs,

and attorneys' fees against Defendants, Hialeah Housing Authority, Alex Morales, Julio Ponce, Ali-

cia Perez, Jose Luis Paniagua, Benjamin Alvarez, and Ana Wydra, and as good grounds state as fol-

lows:

### Preliminary Statement

    1.    Plaintiffs are indigent, disabled, and/or elderly individuals, who are in desperate need

of, and are eligible to receive, assistance under Section 8 of the United States Housing Act of 1937,

as amended, 42 U.S.C. §1437f, and the federal regulations governing the Section 8 program (herei-

nafter "Section 8"). Defendants have systematically and unjustly denied Plaintiffs' valid applications for Section 8 Tenant-Based Assistance Housing Choice Voucher Program (hereinafter "Section 8 Program") without an adequate and justifiable basis. As a result of Defendants' illegal discrimination and unlawful denials, Plaintiffs have been left without the funding they need to secure safe homes.

2.      By perpetrating its discriminatory scheme and unlawful denials, Defendants have intentionally violated procedural and substantive due process as set forth in the Fourteenth Amendment of the United States Constitution; Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f, and the federal regulations governing the Section 8 Program. With respect to Plaintiffs Aida Villarta and Manuel Lopez; the Fair Housing Act, as amended, 42 U.S.C. § 3604; the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213; and Section 504(a) of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794.

3.      Plaintiffs seek a declaration by the Court that Defendants' actions are violations of their rights under the United States Constitution and federal law.

4.      Plaintiffs also seek a preliminary and permanent injunction ordering Defendants to 1) immediately admit Plaintiffs into the Section 8 Program; 2) refrain from taking any further action to deny, limit, or terminate Plaintiffs' participation in the Section 8 Program; 3) refrain from denying housing assistance to applicants for reasons not authorized by law; and 4) granting Plaintiffs Lopez and Villarta a reasonable accommodation due to their disabilities.

5.      Plaintiffs seek damages to the maximum amount allowed by law for their losses that resulted from Defendants' unlawful actions.

- 2 -

## Jurisdiction and Venue

6.     This Court has jurisdiction over this matter under the following:

a.     28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

b.     28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies;

c.     28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

d.     28 U.S.C. § 2201, as this is an action seeking to declare the rights and/or other legal relations of interested parties;

e.     28 U.S.C. § 2202, as this is an action seeking further necessary and proper relief based on a declaratory judgment and/or decree;

f.     Rule 57 of the Federal Rules of Civil Procedure, as this is an action seeking declaratory relief; and

g.     Rule 65 of the Federal Rules of Civil Procedure, as this is an action seeking injunctive relief.

7.     The Plaintiffs' claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988

which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(C), as the Defendants are located in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

<b><u>Parties</u></b>

9.      Plaintiff, Aida Villarta, is a citizen of the United States, and at all times relevant, resided in Hialeah, Florida.  Ms. Villarta is eligible to receive Section 8 Housing Assistance and has applied to the Defendants' Section 8 Program.

10.      Plaintiff, Aida Flores, is a citizen of the United States, and at all times relevant, resided in Hialeah, Florida.  Ms. Flores is eligible to receive Section 8 Housing Assistance and has applied to Defendants' Section 8 Program.

11.      Plaintiff, Georgina De Leon, is a citizen of the United States, and at all times relevant, resided in Miami-Dade County, Florida.  Ms. De Leon is eligible to receive Section 8 Housing Assistance and has applied to Defendant's Section 8 Program.

12.      Plaintiff, Manuel Lopez, is a citizen of the United States, and at all times relevant, resided in Miami-Dade County, Florida.  Mr. Lopez is eligible to receive Section 8 Housing Assistance and has applied to Defendants' Section 8 Program.

13.      Defendant, Hialeah Housing Authority (hereinafter "HHA"), is a public body corporate, and was organized and exists under Florida Statute Chapter 421.  Defendant, HHA is responsible for operating the Section 8 Program in the City of Hialeah pursuant to federal and state law.

- 4 -

14.    Defendant, Alex Morales, is and was at all times relevant to this complaint the Executive Director of the HHA and is responsible for the day to day operations of the HHA and for the management of its employees. At all times relevant to this action defendant Morales, as the Executive Director, was a recipient of federal funds and was acting under color of state law. He is sued in his official capacity.

15.    Defendant, Julio Ponce, is and was at all times relevant to this complaint a Commissioner of the HHA, responsible pursuant to *Fla. Stat.* § 421.05 for exercising the powers of the HHA. At all times relevant to this action Defendant Ponce, as a Commissioner of the HHA, was a recipient of federal funds and was acting under color of state law. He is sued in his official capacity.

16.    Defendant, Alicia Perez, is and was at all times relevant to this complaint a Commissioner of the HHA, responsible pursuant to *Fla Stat.* § 421.05 for exercising the powers of the HHA. At all times relevant to this action defendant Perez, as a Commissioner of the HHA, was a recipient of federal funds and was acting under color of state law. She is sued in her official capacity.

17.    Defendant, Jose Luis Paniagua, is and was at all times relevant to this complaint a Commissioner of the HHA, responsible pursuant to *Fla. Stat.* § 421.05 for exercising the powers of the HHA. At all times relevant to this action defendant Paniagua, as a Commissioner of the HHA, was a recipient of federal funds and was acting under color of state law. He is sued in his official capacity.

18.    Defendant, Benjamin Alvarez, is and was at all times relevant to this complaint a Commissioner of the HHA, responsible pursuant to *Fla. Stat.* § 421.05 for exercising the powers of the HHA. At all times relevant to this action defendant Alvarez, as a Commissioner of the HHA,

- 5 -

was a recipient of federal funds and was acting under color of state law.  He is sued in his official capacity.

19.     Defendant, Ana Wydra, is and was at all times relevant to this complaint a Commissioner of the HHA, responsible pursuant to *Fla. Stat.* § 421.05 for exercising the powers of the HHA. At all times relevant to this action defendant Wydra, as a Commissioner of the HHA, was a recipient of federal funds and was acting under color of state law.   She is sued in her official capacity.

**Background**

A.     **Section 8 Generally**

20.     Section 8 was established by Congress in order to aid lower income families in obtaining a decent place to live and to promote economically mixed housing.

21.     In order to carry-out Section 8, the United States Department of Housing and Urban Development (hereinafter "HUD") provides funds to a governmental entity or public body to act as a public housing agency (hereinafter "PHA") and to operate housing programs for low-income families.

22.     In the City of Hialeah, the Section 8 Program in question is operated by Defendant, Hialeah Housing Authority.

23.     Eligibility for the Section 8 Program is established under the United States Housing Act of 1937, 42 U.S.C. § 1437f(o)(4) and federal regulations.

24.     To be eligible for the Section 8 Program, the applicant must be a "family," must be income eligible, and must be a citizen of the United States or a non-citizen who has eligible immigration status. *See* 24 C.F.R. § 982.201.

- 6 -

25.   Additionally, the PHA is permitted to establish local preferences, and to give priority to serving families that meet those criteria. *See* 24 C.F.R. § 982.207. The Defendant has established local preferences under the Hialeah Housing Authority Administrative Plan (the "Plan"), which, among other things, gives preferences for families that are elderly or disabled, or for families whose members live in the United States of America at the time of the application. *See* Section 4-III. C. of the Plan.

**B.    Defendants' Information Verification Procedures**

26.   Hialeah residents seeking admission into the Section 8 Program must submit an application to the Defendants.

27.   Once an application is submitted to the Defendants, they are required to verify the information provided to them by the applicant. *See* Chapter 7 of the Plan.

28.   Methods of Verification are outlined in the Plan as follows and in order of priority: up-front income verification whenever available; third-party written verification; third-party oral verification; review of documents, and self certifications. *See* Section 7-I.B of the Plan.

29.   Pursuant to the Plan, the Defendants are required to make at least two unsuccessful attempts to obtain third-party verification before using another form of verification. *See* Section 7-I. D. of the Plan. If third party verification is not available, the Defendants shall use documents provided by the family as verification. *See* Section 7-I. F. of the Plan. In the event that information cannot be verified by a third-party or by review of documents, family members are required to submit self-certifications attesting to the accuracy of the information they have provided to the Defendants. *See* Section 7- I.E. of the Plan.

- 7 -

**C.** **Defendants' Information Verification Procedures Regarding Persons with Disabilities**

30. The Plan requires the Defendants to comply fully with all federal, state, and local nondiscrimination laws and rules governing fair housing and equal opportunity in housing, including those that prohibit discrimination based on disability. *See* Section 2- I.A of the Plan.

31. Exhibit 2-1 of Chapter 2 of the Plan defines a person with a disability as a person who "[h]as a physical or mental impairment that substantially limits one or more of the major life activities of an individual, or [h]as a record of such impairment, or [i]s regarded as having such impairment."

32. According to Exhibit 2-1 of the Plan, the term "major life activities" includes but is not limited to "caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and/or working."

33. Pursuant to Section 7- II.F of the Plan, Defendants must verify the existence of a disability in order to allow certain income disallowance and deductions from income, and to qualify for waiting list preferences. Verification of the receipt of disability benefits from the Social Security Administration (hereinafter "SSA") is sufficient verification of disability for the purpose of qualifying for waiting list preferences, and/or certain income disallowance and deductions. *See Id.*

34. If the applicant receives disability related benefits from the SSA, then Defendants are required to attempt to obtain information about disability benefits through the HUD Enterprise Income Verification System, or the HUD Tenant Assessment System (collectively, the "HUD Systems"). *See Id.* If the HUD Systems fail to provide Defendants with verification of the applicant's disability, Defendants must request an SSA benefit verification letter from each family member claiming disability status. *See Id.* If the family is unable to provide the documents, Defendants must

ask the family to request a benefit verification letter either by calling SSA, or by requesting it online. *See Id*

35.     Defendants are prohibited from inquiring about the nature or extent of a person's disability, from inquiring about a person's diagnosis or details of treatment for a disability or medical condition, and from requesting a participant's medical records. *See Id.*

**D.     Denial of Applications**

36.     Pursuant to Federal Regulations, HHA "must give an applicant for participation prompt notice of a decision denying assistance to an applicant." The notice must contain a statement of the reasons for HHA's decision. The notice must further state that the applicant may request an informal review and must describe how to obtain the informal review. *See* 24 C.F.R. § 982.554(a).

37.     Under the Federal Regulations, "the PHA must give an applicant the opportunity for an informal review of the PHA decision... [and] the PHA must notify the applicant of the PHA final decision... including a brief statement of the reasons for the final decision." *See* 24 C.F.R. § 982.554(b).

38.     According to the Plan, "[t]he PHA will use the concept of the preponderance of the evidence as the standard for making all admission decisions." *See* Section 3 III. E. of the Plan.

**E.     Defendants' Discriminatory and Unlawful Customs and Practices**

39.     Defendants have discriminated against Plaintiffs and unlawfully denied them housing benefits by failing to follow the procedures outlined in the Plan and by failing to abide by federal law when accessing Plaintiffs' eligibility for the Section 8 Program.

40.     Specifically, Defendants have requested documents from the Plaintiffs that are outside the scope of those required by the Plan and/or federal law, including documents that the Plaintiffs

- 9 -

could not provide; the Defendants have illegally refused to verify the information furnished by Plaintiffs, despite the fact that Plaintiffs have supplied Defendants with documents, oral representations, and self certifications that satisfy the Plan and federal law; and the Defendants have failed to afford certain Plaintiffs an informal hearing upon the denial of their respective applications.

41.     As a result of Defendants' discriminatory and unlawful customs and practices Plaintiffs' applications for the Section 8 Program have been unjustly denied.

### Specific Factual Allegations

A.    **Discrimination Perpetrated by Defendants Against Ms. Villarta**

*Ms. Villarta's Background*

42.     Plaintiff Ms. Villarta is a 65 year old disabled woman, who lives alone. She suffers from Tachycardia, severe Xerosis, Poly-Arthritis, Clinical Depression, Anxiety Disorder, hearing impairment, and Tinnitus. As a result of her conditions, Ms. Villarta experiences severe pain, shortness of breath, difficultly walking, extremely itchy skin, difficulty understanding verbal communication, melancholy, and tension. Due to these disabilities, Ms. Villarta is limited in her daily life activities. Therefore, Ms. Villarta is disabled as defined by Exhibit 2-1 of Chapter 2 of the Plan.

43.     Ms. Villarta receives disability related benefits from a program administered by the Social Security Administration. Proof of receipt of such benefit serves as verification of her disability pursuant to Section 7- II.F of the Plan.

44.     Ms. Villarta's only income is $674 per month in Supplemental Security Income, and $129 per month in food stamps. Due to her limited income, Ms. Villarta is unable to find decent affordable housing in southern Florida.

45.    As a result of her low income and her disabilities, Ms. Villarta is eligible to partici-
pate in the Section 8 Program.

***Defendants shirk their legal obligations and place roadblocks between Ms. Villarta and
her ability to secure the safe housing she is entitled to under the laws of the United States***

46.    In 2005, Ms. Villarta submitted an application for the Section 8 Program to the De-
fendant. On her application, she indicated that a member of her family was disabled.

47.    Upon receipt of Ms Villarta's application, Defendants were required to attempt veri-
fication of Ms. Villarta's disability by accessing the HUD Systems. *See* Section 7- II.F of the Plan.

48.    Instead of adhering to its own legal requirements, Defendants, after years of delay,
sent Ms. Villarta a letter on May 14, 2007, wherein the Defendants inappropriately requested that
Ms. Villarta submit proof of her disability. Contrary to the requirements of law, Defendants failed to
indicate what type of documentation would be acceptable, nor did Defendants indicate how Ms. Vil-
larta could obtain acceptable documentation. *See* Section 7- II.F of the Plan.

49.    In turn, Ms. Villarta submitted a printout showing the assistance she receives through
Supplemental Security Insurance (hereinafter "SSI").

50.    On June 8, 2007, the Defendants sent another letter to Ms. Villarta advising her that
the printout of her SSI was not sufficient. The letter indicated that she had 30 days to submit addi-
tional documentation, but failed to indicate what documentation would be acceptable.

51.    On June 15, 2007, Ms. Villarta submitted letters from two doctors and documentation
from Palmetto General Hospital substantiating her disability.

52.     On June 15, 2007, Ms. Villarta was orally advised by the Defendants that the documentation she submitted on that day was not adequate, because the documentation did not confirm that she was permanently disabled.

53.     That same day, Ms. Villarta phoned her doctor and asked him to write another letter indicating that she was permanently disabled.

54.     This new letter from Ms. Villarta's doctor, written to verify that she suffered from a permanent disability, was faxed to the Defendants on June 16, 2007.

55.     Outrageously, the Defendants never contacted Ms. Villarta to advise her as to whether the documentation she provided to them was acceptable. Instead, on July 20, 2007, Defendants sent a letter to Ms. Villarta informing her that the documentation she submitted was not acceptable and that she would be denied housing assistance.

56.     Ms. Villarta should not have had to provide the Defendants with any information regarding her disabilities, as all the information Defendants needed to verify Ms. Villarta's status was obtainable through the HUD Systems, and Defendants were mandated by law to attempt verification of Ms. Villarta's disabilities through the HUD Systems before requesting any documentation from Ms. Villarta. *See* Section 7- II.F of the Plan.

57.     Even if the Defendants were unable to obtain the requisite information from the HUD Systems, Defendants still failed to live up to its legal obligations, as they were required to request an SSA benefit verification letter from Ms. Villarta, and inform her as to how to obtain one in the event that she did not posses one–Defendants did neither. *See* Section 7- II.F of the Plan.

58.    Despite Defendants' illegal actions, Ms. Villarta had submitted sufficient proof of her disability on June 16, 2007, when she submitted the letter from her doctor that indicated the she was permanently disabled.

59.    On July 23, 2007, Ms. Villarta submitted another letter to the Defendants explaining that she had already submitted proof of her disability and attached the previously-submitted medical documentation.

60. .    Ms. Villarta never received any information regarding her right to an informal hearing.

61.    Ms. Villarta was allegedly sent a letter on August 27, 2007, informing her that her Section 8 application was denied, because she did not provide the proper documentation, and did not appear for her scheduled hearing.

62.    On March 5, 2008, and August 4, 2008, Ms. Villarta, sent letters to the Defendant, HHA's Executive Director, Defendant, Alex Morales. The letters outlined the foregoing facts and requested that Ms. Villarta be reinstated to the waiting list or given a hearing.

63.    Defendant, Alex Morales intentionally and deliberately ignored these requests.

64.    Ms. Villarta has suffered emotional and mental distress, humiliation, shame, and degradation as result of Defendants' actions.

65.    In sum, Defendants inappropriately denied Ms. Villarta's application for the Section 8 Program, and violated the law by, among other things, 1) failing to verify Ms. Villarta's disabilities through the HUD Systems; 2) failing to advise Ms. Villarta as to what documentation Defendants needed to process her application for the Section 8 Program; 3) failing to advise Ms. Villarta as to how to obtain the necessary documentation; 4) failing to provide Ms. Villarta with an informal hear-

ing; and 5) discriminating against Ms. Villarta on the basis of her disabilities and failing to provide a reasonable accommodation.

**B.**   **Discrimination Perpetrated by Defendants Against Mr. Lopez**

*Mr. Lopez's background*

66.    Mr. Lopez is a 67 year old disabled man, who lives with his daughter.

67.    Mr. Lopez has several disabilities, including, incurable Insulin Dependent Diabetes Mellitus, Peripheral Vascular Disease, Chronic Obstructive Pulmonary Disease, Global Cognitive Impairment, Depression, and Generalized Anxiety Disorder.  As a result of his disabilities, Mr. Lopez suffers from chronic pain, weakness, cramping in muscles, increased urination, weight loss, fatigue, cramping in the stomach, vomiting, persistent cough, shortness of breath, and wheezing, which can lead to respiratory failure.

68.    Mr. Lopez's conditions require constant treatment, and as a result, a nurse must see Mr. Lopez in his home twice per day to, among other things, administer Insulin.  Additionally, Mr. Lopez must wear an oxygen mask while sleeping.

69.    Mr. Lopez has difficulty performing everyday tasks such as walking and going grocery shopping.  Mr. Lopez is also limited in his daily life activities, as he is unable to seek employment, run basic errands, and travel long distances.  Therefore, Mr. Lopez is disabled as defined by Exhibit 2-1 of Chapter 2 of the Plan.

70.    Mr. Lopez receives disability related benefits from a program administered by the Social Security Administration.  Proof of receipt of such benefit serves as verification of his disability pursuant to Section 7- II.F of the Plan.

- 14 -

71. The total monthly income of the family is $844 per month in Supplemental Security Income and Disability Benefits. Due to the family's limited income, Mr. Lopez is unable to find decent affordable housing in southern Florida.

72. As a result of his family's low income and his disabilities, Mr. Lopez is eligible to participate in the Section 8 Program.

***Defendants, who are legally charged with providing assistance to those in need, obstruct Mr. Lopez's valid application for the Section 8 Program contrary to the letter and spirit of the law***

73. Mr. Lopez applied for admittance into the Section 8 Program in August of 2005.

74. On his application, Mr. Lopez properly indicated that he was a disabled individual.

75. Upon receipt of Mr. Lopez's application, Defendants were required to attempt verification of Mr. Lopez's disabilities by accessing the HUD Systems. *See* Section 7- II.F of the Plan.

76. Instead of adhering to its legal requirements, Defendants, after years of delay, sent Mr. Lopez a letter on June 8, 2007, wherein Defendants inappropriately requested "documentation that substantiates that a member of [Mr. Lopez's] family is disabled." Contrary to the requirements of law, Defendants failed to indicate what type of documentation would be acceptable, nor did Defendants indicate how Mr. Lopez could obtain acceptable documentation. *See* Section 7- II.F of the Plan.

77. Regardless, Mr. Lopez submitted legally sufficient documentation of his disability to Defendants within the time-frame proscribed by Defendants. The documentation included, among other things, a letter from his doctor confirming that he suffers from Dependent Diabetes Mellitus, Neuropathy of Lower Extremity, Peripheral Vascular Disease, and Chronic Obstructive Pulmonary

Disease; and documentation from the Social Security Administration, which indicated that Mr. Lopez receives Social Security benefits.

78.     In clear violation of the law, Defendants never contacted Mr. Lopez to advise him as to whether the documentation he provided to Defendants was acceptable, nor did they ever advise him as to what documentation he needed to provide. *See* Section 7- II.F of the Plan.

79.     In June of 2008, Mr. Lopez went to Defendant, HHA's office to inquire as to the status of his application, and he was advised that his application had been closed without an explanation.

80.     In January of 2008, Mr. Lopez sent a letter to Defendant, HHA's Executive Director, Alex Morales, stating that Mr. Lopez's application should be reinstated because he had properly submitted documentation of his disability.

81.     In response, the Defendants agreed to provide Mr. Lopez with an informal hearing. An informal hearing occurred before an HHA hearing officer on April 14, 2009.

82.     At the hearing, Mr. Lopez argued that he submitted enough documentation to substantiate his disabilities and further submitted a "Medical Certification for Disability," which was submitted to the Department of Homeland Security as part of Mr. Lopez's application for U.S. Citizenship. In this Certification, Dr. Laura De La Nuez confirmed that Mr. Lopez is disabled.

83.     The Defendants issued a hearing decision on April 21, 2009, upholding the decision to deny housing assistance to Mr. Lopez. The hearing decision states specifically that, "the application was properly denied because the applicant could not provide proof that he met the disabled preference *in 2005.*" (emphasis added).

- 16 -

84.     At no time prior to the hearing did Defendants request proof that Mr. Lopez was disabled at the time of his original application.

85.     In a continued effort to provide the Defendants with every piece of documentation requested by them, on April 23, 2009, Mr. Lopez submitted documentation from the Social Security Administration to the HHA hearing officer confirming that Mr. Lopez was eligible for Federal Benefits due to his disabilities in *April 2004*. In a letter that accompanied the SSA documentation, Mr. Lopez requested that the Defendants reconsider their decision to deny Mr. Lopez's application in light of this new evidence demonstrating that Mr. Lopez was disabled before the time of his original Section 8 application. The letter further describes the numerous disabilities that Mr. Lopez suffers from, and requests that this new evidence be considered as a "reasonable accommodation."

86.     The HHA hearing officer responded to this letter advising Mr. Lopez that he would not reverse the original hearing decision, because the letter "did not provide any new evidence for my consideration." The letter from the HHA hearing officer is not dated, but was received by Mr. Lopez on April 30, 2009.

87.     The letter further advises Mr. Lopez that the Defendants would be contacting him to process the reasonable accommodation request made in the April 23, 2009, letter. As of the date of this filing, the Defendants have not contacted Mr. Lopez regarding Mr. Lopez's request for a reasonable accommodation.

88.     Mr. Lopez has suffered emotional and mental distress, humiliation, shame, and degradation as result of Defendants' actions.

89.     In sum, Defendants inappropriately denied Mr. Lopez's application for the Section 8 Program, and violated the law by, among other things, 1) failing to verify Mr. Lopez's disabilities

- 17 -

through the HUD Systems; 2) failing to advise Mr. Lopez as to what documentation Defendant

needed to process Mr. Lopez's application for the Section 8 Program; 3) failing to advise Mr. Lopez

as to how to obtain the necessary documentation; and 4) discriminating against Mr. Lopez on the ba-

sis of his disabilities and failing to provide a reasonable accommodation.

**C.**     **Unlawful Denial of Benefits Perpetrated by Defendants Against Ms. De Leon**

     *Ms. De Leon's background*

90.     Ms. De Leon is 75 years old and lives alone.  Ms. De Leon's only income is $637 per

month in Supplemental Security Insurance, and $64 per month in food stamps.  Due to Ms. De

Leon's limited income she is unable to find decent affordable housing in Southern Florida.

91.     Ms. De Leon is eligible to participate in the Section 8 program and applied for Sec-

tion 8 Housing Assistance with the Defendants.

92.     Ms. De Leon has been on the waiting list for the Section 8 Program since February

2003.

     *Under the auspices of verification, Defendants once again hinder an otherwise eligible*
*applicant by requesting unreasonable documentation and failing to advise the applicant*
*that she could submit a self-certification*

93.     On Monday, February 19, 2008, five years after Ms. De Leon submitted her applica-

tion for the Section 8 Program to the Defendants, HHA finally sent Ms. De Leon a Notification of

Pending Documents letter, wherein Defendants demanded that Ms. De Leon provide them with the

last three statements for the telephone numbers on her original application, (305) 669-5359 and (786)

488-0528.

94.     At the time of Ms. De Leon's application to the Section 8 program, she was renting a

room in the home of Belkys Mercado, located at 6140 SW 62nd Place, Miami Fl 33143.  Ms. De

Leon did not have a phone at this time, and her landlord allowed Ms. De Leon to use her phone. On Ms. De Leon's original application for the Section 8 Program, she listed her landlord's land-line phone number (305-669-5359) and her landlord's cell phone number (786-488-0528) as contact numbers. Ms. De Leon never used these numbers as her own numbers, and never made payments on or had any involvement with the phone accounts. In June of 2007, Ms. De Leon moved out of the home and rented a new unit.

95. Ms. De Leon did not obtain her own phone line until November 29, 2007. Her phone number is currently (305) 861-7985.

96. The phone numbers on Ms. De Leon's original application belonged to Ms. Mercado, not Ms. De Leon. Accordingly, Ms. De Leon did not have access to the documents requested by the Defendants. Regardless, Ms. De Leon made every effort to comply with Defendants' request by asking Ms. Mercado to provide her with her phone records. Unfortunately, Ms. Mercado did not have all the copies of her old phone bills and was unable to procure them from the companies that she contracted with.

97. Ms. De Leon informed the Defendants in person that she could not obtain the phone records that they requested. Ms. De Leon submitted a letter from Ms. Mercado to the Defendants explaining that the phone numbers listed on the original application were Ms. Mercado's phone numbers. The letter explains that Ms. Mercado does not have copies for her old phone bills and that one of the numbers has been changed. The letter further states, "[i]f you need any further information, please feel free to contact me via my cell phone (786) 488-0528."

98. Defendants contacted Ms. Mercado by telephone, and Ms. Mercado advised Defendants of the situation.

99.    At no time did Defendants make any other efforts to contact any additional third-parties to verify the information provided to them by Ms. De Leon and/or Ms. Mercado.

100.    On March 18, 2008, Defendants sent a notice to Ms. De Leon, explaining that she was being denied admittance into the Section 8 Program, because she failed to provide requested documentation. The letter went on to state that Ms. De Leon did not provide Defendants with "a statement from the AT&T Company for the Month of November, 2007."

101.    The November 2007 AT&T statement was not requested in the Notification of Pending Documentation letter, which was sent to Ms. De Leon on February 19, 2008.

102.    The Notice of Denial also states that Ms. De Leon failed to provide "the last three statements for the numbers on your original application, which are (305) 669-5359 and (786) 488-0528."

103.    After the March 18 2008, denial letter, Ms. Mercado received the phone bill statements from Bell South. This documentation included bill statements for the land-line phone number from April 2007 through October 2007.

104.    Ms. De Leon timely requested an informal hearing on her denial.

105.    This informal hearing was held on April 17, 2008, in front of an HHA hearing officer. At the hearing, Ms. De Leon explained that the documentation could not be provided timely by her as the listed phone numbers were not her phone numbers and she was never in charge of the accounts. Ms. De Leon did attempt to provide the documentation Ms. Mercado received from the telephone company, but was informed that this documentation could not be accepted at the hearing, as it was due on February 22, 2008.

- 20 -

106.   The HHA hearing officer issued a decision on April 25, 2008, upholding the denial of assistance to Ms. De Leon, because Ms. De Leon had failed to provide the documentation requested by the Defendants.

107.   Ms. De Leon has suffered emotional and mental distress, humiliation, shame, and degradation as result of Defendants' actions.

108.   In sum, Defendants inappropriately denied Ms. De Leon's application for the Section 8 Program, and violated the law by, among other things, 1) ignoring the written verification provided to them; 2) ignoring the oral verification provided to them; 3) failing to procure third-party written verification beyond what was supplied to them by Ms. De Leon and Ms. Mercado; 4) failing to procure third-party oral verification beyond the phone conversation Defendants had with the landlord; 5) failing to advise Ms. De Leon that she could submit a self certification; 6) failing to advise Ms. De Leon of all the documents which were being requested; 7) requesting documents which were not rationally related to a determination of her Section 8 eligibility.

## D.   Unlawful Denial of Benefits Perpetrated by Defendants Against Ms. Flores

### Ms. Flores's background

109.   Ms. Flores is an 86 year old disabled woman, who lives alone.

110.   Ms. Flores suffers from several disabilities including, among others, Coronary Artery Disease and Heart Disease.

111.   Ms. Flores receives $343 per month in Social Security benefits and $390 from a pension. Ms. Flores also receives $59 per month in food stamps. Ms. Flores will sporadically receive financial assistance from members of her family. Due to Ms. Flores's limited income she is unable to find decent affordable housing in southern Florida.

112.    Ms. Flores is eligible to participate in the Section 8 program and applied for admittance into the Section 8 Program in 2004.

**Defendants unjustly curtail Ms. Flores's constitutionally protected rights and deny her application for the Section 8 Program**

113.    On January 25, 2008, nearly four (4) years after Ms. Flores submitted her application for the Section 8 Program, Defendants sent Ms. Flores a letter requesting that she provide Defendants with multiple documents, including a letter from her landlord, either notarized or on letterhead, indicating who lived in the unit, how much rent is paid, and what is included in the rent.

114.    Upon receipt of this letter, Ms. Flores immediately asked her landlord for such a letter.

115.    The property manager of Ms. Flores's apartment building provided Ms. Flores with a letter, which confirmed that Ms. Flores was a tenant in the property.   The letter confirmed Ms. Flores's address and monthly rent and indicated that "[r]ent has always been paid on time." The letter states, "[i]f I can be of further assistance, please contact me at the number below." The letter then provides a contact phone number.

116.    Ms. Flores timely submitted this document to the Defendants.

117.    On February 1, 2008, the Defendants again sent a letter to Ms. Flores requesting that she provide them with a letter from her landlord indicating who lived in the unit, how much rent is paid, and what is included in the rent. The letter required that this documentation be provided to Defendants in one week's time–February 8, 2008.

118.    Ms. Flores asked her landlord for a second letter including the requested information.

- 22 -

119.   Ms. Flores's landlord wrote a second letter again confirming the rent and address of Ms. Flores. The letter further states that Ms. Flores's rent includes "washer/dryer and alarm." This letter was submitted timely to the Defendants.

120.   On February 15, 2008, Ms. Flores received a notice of denial of assistance from the Defendants for failure to provide documents, which were requested by the Defendants. Among the documents Ms. Flores allegedly did not provide was a letter from her landlord indicating who lived in the unit, how much rent is paid, and what is included in the rent.

121.   At the request of Ms. Flores, her landlord wrote a third letter to the Defendants, dated April 1, 2008. The letter again indicated Ms. Flores's address and rent, and goes on to state that the tenancy includes "water, sewer, garbage, and washer/dryer."

122.   This documentation was not accepted by the Defendants, and Ms. Flores's landlord submitted a fourth letter confirming the same information. This letter confirmed that "Ms. Flores is the only person living in the unit and on the lease". The fourth letter is dated April 9, 2008.

123.   Ms. Flores timely requested an administrative hearing to contest her denial of assistance and an administrative hearing was held on May 21, 2008, in front of an HHA hearing officer.

124.   At the hearing, Ms. Flores argued that she had presented all necessary information.

125.   On June 5, 2008, the Defendant, HHA hearing officer issued a hearing decision upholding the decision to deny Ms. Flores. Specifically, the hearing officer found that "Applicant did not provide acceptable landlord letter despite two written requests."

126.   On June 26, 2008, Ms. Flores sent an appeal letter to Defendant, HHA's Executive Director, Alex Morales, asking that the hearing decision be overturned. The appeal letter explains that Ms. Flores submitted the documentation requested by the Defendants.

127.    Defendants have not made a decision regarding this appeal letter despite numerous requests for a response from Ms. Flores.

128.    Ms. Flores has suffered emotional and mental distress, humiliation, shame, and degradation as result of Defendants' actions.

129.    In sum, Defendants inappropriately denied Ms. Flores' application for the Section 8 Program, and violated the law by, among other things, 1) ignoring the written verification provided to them; 2) failing to procure third-party written verification beyond what was supplied to them by Ms. Flores; 3) failing to procure third-party oral verification; 4) failing to advise Ms. Flores that she could submit a self certification; and 5) requesting documents which were not rationally related to a determination regarding her Section 8 eligibility.

## COUNT ONE

### Violation of the United States Housing Act
### (42 U.S.C. §1983)

130.    Paragraphs 1 through 129 are incorporated by reference herein the same as though fully set forth herein.

131.    Defendants subjected the Plaintiffs or caused the Plaintiffs to be subjected to the deprivation of rights secured by the Constitution and/or laws of the United States, namely rights secured by 42 U.S.C. § 1437 *et. seq.* and regulations adopted pursuant thereto and 42 U.S.C. § 1983, by, among other things, intentionally failing to follow legally mandated verification procedures, and inappropriately denying Plaintiffs' applications for the Section 8 Program.

132.    Defendants were acting under the color of state law when they deprived Plaintiffs of their rights.

133.   Defendants have wrongfully denied Plaintiffs access to a program that they are eligible for which would have provided them with access to affordable housing.

134.   Plaintiffs have suffered economic losses as a direct result of Defendants' intentional depravation of Plaintiffs' rights.

WHEREFORE, Plaintiffs respectfully request this Court to:

A.   assume jurisdiction over this matter;

B.   declare the Defendants' actions or inactions violate the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437, regulations adopted pursuant thereto, and 42 U.S.C. § 1983;

C.   enter preliminary and permanent injunctive relief ordering the Defendant, their successors in office, and their servants, agents and employees, and those acting in concert with them, to immediately admit Plaintiffs into the Section 8 Program; refrain from taking any further action to deny, limit, or terminate Plaintiffs' participation in the Section 8 Program; and refrain from denying Section 8 assistance to applicants for reasons not authorized by law;

D.   award Plaintiffs compensatory damages for their economic losses incurred as a result of the delay in providing Plaintiffs with Section 8 assistance due to Defendants' unlawful actions;

E.   award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

F.   grant Plaintiffs such other relief as the Court may deem just and equitable.

## COUNT TWO

### Violation of Procedural Due Process
### (42 U.S.C. §1983)

135.   Paragraphs 1 through 129 are incorporated by reference herein the same as though fully set forth herein.

136.   Pursuant to the 14th Amendment to the United States Constitution, applicants to Defendants' Section 8 program are entitled to procedural Due Process of law.

137.   Pursuant to the United States Housing Act, the Hialeah Housing Authority is required to follow the procedures in its own Administrative Plan, as well as the federal regulations governing the Section 8 Program.

138.   Defendant Hialeah Housing Authority's Administrative Plan, as well as the federal regulations governing the Section 8 Program, were enacted to ensure that applicants to and participants in PHA subsidized housing receive the housing assistance they are eligible for.

139.   Defendants' intentional failure to abide by its own Verification Procedures and Application Process, in its own Administrative Plan, as well as the federal laws and regulations governing the Section 8 Program, resulted in an unfair process and an arbitrary denial of Plaintiffs' application in violation of the Due Process Clause to the 14th Amendment to the United States Constitution.

140.   Plaintiffs were deprived of a federal right, including but not limited to the loss of property and liberty, by the Defendants while acting under color of state law, in that Defendants denied Plaintiffs' access to the Section 8 program by requesting documents and using an application process which violates the Due Process Clause of the 14th Amendment to the United States Constitution.

141.   Plaintiffs have suffered irreparable harm by being denied access to a program that they are eligible for which would have provided them with access to affordable housing.

142.   Plaintiffs have suffered economic losses associated with wrongfully being denied Section 8 subsidized housing, and have endured hardships such as substandard housing.

143.   Defendants' practice of ignoring their own application and verification procedures, in violation of Federal law and the applicable federal regulations, has become a widespread custom and practice of the Defendants.

WHEREFORE, Plaintiffs respectfully request this Court to:

A.   assume jurisdiction over this matter;

B.   enter a declaratory judgment that Defendants, by denying Section 8 Housing Assistance to these Plaintiffs arbitrarily and in violation of federal law and its own administrative plan, violates Plaintiffs' right to due process under the Fourteenth Amendment of the United States Constitution as well as the statutes and regulations governing the Section 8 program, and 42 U.S.C. § 1983;

C.   enter preliminary and permanent injunctive relief ordering the Defendant, their successors in office, and their servants, agents and employees, and those acting in concert with them, to immediately admit Plaintiffs into the Section 8 Program; refrain from taking any further action to deny, limit, or terminate Plaintiffs' participation in the Section 8 Program; and refrain from denying Section 8 assistance to the Plaintiffs for reasons not authorized by law;

D.   compensate all Plaintiffs for their economic losses incurred as a result of the delay in providing Plaintiffs with Section 8 assistance due to Defendants' unlawful actions.

E.    award all Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C § 1988; and

F.    grant all Plaintiffs such other relief as the Court may deem just and equitable.

## COUNT THREE

### Violation of Substantive Due Process
### (42 U.S.C. §1983)
### (Plaintiffs De Leon and Flores Only)

144.    Paragraphs 1 through 129 are incorporated by reference herein the same as though fully set forth herein.

145.    Pursuant to the 14th Amendment to the United States Constitution, applicants to Defendants' Section 8 program are entitled to substantive Due Process of law.

146.    The phone records HHA requested from Ms. De Leon's former landlord, an individual not on Ms. De Leon's application, and not a member of her household, were not within Ms. De Leon's ability to provide.

147.    These phone records would not affect Ms. De Leon's Section 8 status in any way, and were not rationally related to her Section 8 application.

148.    The letter HHA requested from Ms. Flores' landlord,  an individual not on Ms. Flores' application, and not a member of her household, were not within Ms. Flores' ability to provide.

149.    This requested documentation would not affect Ms. Flores' Section 8 status in any way, and as such was not rationally related to her Section 8 application or to any other legitimate state interest or governmental objective.

150.    The request for these documents and the subsequent denial based on failure to provide documents which were not rationally related to Ms. De Leon's and Ms. Flores' eligibility for the Sec-

tion 8 Program were a violation of the Due Process Clause of the United States Constitution.

151.   Ms. Flores and Ms. De Leon were deprived of a federal right by the Hialeah Housing Authority, and acting under color of state law, in that HHA denied Plaintiffs access to the Section 8 program by requesting documents which were not rationally related to their eligibility for the federal program for which they were applying for.

152   Ms. Flores and Ms. De Leon have suffered irreparable harm by being denied access to a program which they are eligible for which would have provided them with access to affordable housing.

153.   Ms. De Leon and Ms. Flores have suffered economic losses associated with wrongful-ly being denied Section 8 subsidized housing, and have endured hardships such as substandard hous-ing.

154.   Defendants' practice of requesting documentation of applicants which is not rationally related to an applicant's eligibility and/or not within the ability of the applicant to obtain, in viola-tion of Federal law and the applicable federal regulations, has become a widespread custom and practice of the Hialeah Housing Authority.

WHEREFORE, Plaintiffs De Leon and Flores respectfully request this Court to:

A.   assume jurisdiction over this action;

B.   pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57, enter a judgment declaring that Defendants, by intentionally denying Section 8 Housing Assistance to Applicants ar-bitrarily and in violation of federal law and its own administrative plan, violates Plaintiffs' right to substantive due process under the Fourteenth Amendment of the United States Constitution as well as the statutes and regulations governing the Sec-

- 29 -

tion 8 program;

C.     enter a permanent injunction ordering Defendants to follow their own housing assistance application procedures as established in the Hialeah Housing Authority Administrative Plan;

D.     enter a permanent injunction ordering Defendants to follow the Procedures outlined in Chapter 7 of its own Administrative Plan in relation to the procedures for verification of documents;

E.     enter a permanent injunction prohibiting Defendants from requesting documents related to the income, assets, or status of persons not in the applicant's household or persons not on the housing application, unless those documents are directly related to the Plaintiffs' eligibility in the Section 8 program;

F.     enter a permanent injunction prohibiting Defendants from denying applications to the Section 8 housing program for failure to provide documents which are not possible for Plaintiffs to provide;

G.     pursuant to 28 U.S.C. §2202, 42 U.S.C. §1983 and Fed.R.Civ.P. 65, enter a permanent injunction ordering Defendant to reinstate Plaintiffs' application to the Section 8 program and prohibiting them from taking any further action denying, limiting or terminating their participation in the Section 8 program without due process or compliance with federal law, and permanently enjoining Defendants from denying housing assistance for applicants for reasons not authorized by law;

H.     order Plaintiff to reevaluate the Section 8 applications of Plaintiffs and re-determine of they are eligible for Section 8 Housing Assistance;

I.       compensate Plaintiffs for their losses associated with their inability to obtain subsidized housing due to Defendants' unlawful actions.

J.       grant Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. 1988, and Fed.R.Civ.P54(d), and;

K.       grant such other and further relief as the Court deems just and equitable.

## COUNT FOUR

### Violation of the Fair Housing Act
### (Plaintiffs Lopez and Villarta only)

155.     Paragraphs 1 through .are incorporated by reference herein the same as though fully set forth herein.

156.     Plaintiffs Lopez and Villarta are disabled within the meaning as defined by the Fair Housing Act.

157.     Defendants have discriminated and are continuing to discriminate against Plaintiffs Lopez and Villarta on the basis of their disabilities by, among other things, failing to follow legally mandated verification procedures, inappropriately denying Plaintiffs Lopez and Villarta's applications for the Section 8 Program, and failing to make reasonable accommodations for Plaintiffs Lopez and Villarta in light of their disabilities. and thereby deny them housing in violation of the Fair Housing Act, 42 U.S.C. § 3604 *et seq.*

158.     Plaintiffs Lopez and Villarta have been wrongfully denied access to a program that they are eligible for which would have provided them with access to affordable housing.

159.   As a result of Defendants' discriminatory actions in violation of the Fair Housing Act, disabled Plaintiffs Lopez and Villarta have suffered economic losses associated with moving, the loss of housing, humiliation, shame, degradation, and emotional and mental distress.

160.   As a result of Defendants' discriminatory actions in violation of the Fair Housing Act, disabled Plaintiffs Lopez and Villarta have suffered economic losses associated with the delay in securing housing, have suffered hardships such as substandard housing, humiliation, shame, degradation, and emotional and mental distress.

WHEREFORE, Plaintiffs Lopez and Villarta respectfully request this Court to:

A.   assume jurisdiction over this matter;

B.   declare that Defendants' actions discriminate against persons with disabilities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and implementing regulations;

C.   enter preliminary and permanent injunctive relief requiring Defendants to immediately admit Plaintiffs into the Section 8 Program; refrain from taking any further action to deny, limit, or terminate Plaintiffs' participation in the Section 8 Program; and refrain from denying Section 8 assistance to applicants for reasons not authorized by law;

D.   award Plaintiffs Lopez and Villarta damages for emotional and mental distress, humiliation, shame, and degradation;

E.   award Plaintiffs attorneys' fees and costs in this action pursuant to 29 U.S.C. § 794a(b); and

F.   grant such other and further relief as the Court deems just and equitable.

## COUNT FIVE

### Violation of Section 504 of the Rehabilitation Act
### (Plaintiffs Lopez and Villarta only)

161.   Paragraphs 1 through 129 are incorporated by reference herein the same as though fully set forth herein.

162.   Defendant, HHA has violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 with respect to Plaintiffs Lopez and Villarta.

163.   Plaintiffs Lopez and Villarta are disabled within the meaning as defined by the Rehabilitation Act.

164.   Plaintiffs Lopez and Villarta are qualified to be admitted into the Section 8 Program.

165.   Defendant, HHA discriminated against Plaintiffs Lopez and Villarta by, among other things, failing to follow legally mandated verification procedures, inappropriately denying Plaintiffs Lopez and Villarta's applications for the Section 8 Program, and failing to make reasonable accommodations for Plaintiffs Lopez and Villarta in light of their disabilities.

166.   Defendant, HHA receives federal financial assistance.

WHEREFORE, Plaintiffs Lopez and Villarta respectfully request this Court to:

A.   assume jurisdiction over this matter;

B.   declare that Defendant, HHA's actions discriminate against persons with disabilities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and implementing regulations;

C.   enter preliminary and permanent injunctive relief requiring defendants to immediately admit Plaintiffs into the Section 8 Program; refrain from taking any further action

- 33 -

to deny, limit, or terminate Plaintiffs' participation in the Section 8 Program; and re-frain from denying Section 8 assistance to applicants for reasons not authorized by law;

D.    award Plaintiffs Lopez and Villarta damages for emotional and mental distress, hu-miliation, shame, and degradation;

E.    award Plaintiffs compensatory damages; and

F.    award Plaintiffs attorneys' fees and costs in this action pursuant to 29 U.S.C. § 794a(b); and

G.    grant such other and further relief as the Court deems just and equitable.

## COUNT SIX

### Violation of Americans with Disabilities Act
### (Plaintiffs Lopez and Villarta only)

167.    Paragraphs 1 through 129 are incorporated by reference herein the same as though ful-ly set forth herein.

168.    Defendant, HHA, has violated Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 with respect to Plaintiffs Lopez and Villarta.

169.    Plaintiffs Lopez and Villarta are disabled.

170.    Plaintiffs Lopez and Villarta are qualified to be admitted into the Section 8 Program.

171.    Defendant, HHA, discriminated against Plaintiffs Lopez and Villarta by, among other things, failing to follow legally mandated verification procedures, inappropriately denying Plaintiffs Lopez and Villarta's applications for the Section 8 Program, and failing to make reasonable accom-modations for Plaintiffs Lopez and Villarta in light of their disabilities.

- 34 -

WHEREFORE, Plaintiffs Lopez and Villarta respectfully request this Court to:

A.   assume jurisdiction over this matter;

B.   declare that Defendant, HHA's actions discriminate against persons with disabilities in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 and implementing regulations;

C.   enter preliminary and permanent injunctive relief requiring defendants to immediately admit Plaintiffs Lopez and Villarta into the Section 8 Program; refrain from taking any further action to deny, limit, or terminate Plaintiffs Lopez and Villarta's participation in the Section 8 Program; and refrain from denying Section 8 assistance to applicants for reasons not authorized by law;

D.   award Plaintiffs Lopez and Villarta damages for emotional distress, humiliation, shame, degradation and mental anguish;

E.   award Plaintiffs compensatory damages;

F.   award Plaintiffs attorneys' fees and costs in this action pursuant to 29 U.S.C. § 794a(b); and

G.   grant such other and further relief as the Court deems just and equitable.

(Plaintiffs are seeking their attorneys' fees and costs for the work and services provided by the Florida Justice Institute, Inc.  Legal Services of Greater Miami, Inc. will not seek to recoup its fees and costs.).

## JURY DEMAND

Plaintiffs demand trial by jury on all issues which can be heard by a jury.

Respectfully submitted,

Jeffrey Hearne, Esq.
Fla. Bar No. 512060
Sean Rowley, Esq.
Fla  Bar No. 0026935

Legal Services of Greater Miami, Inc.
3000 Biscayne Blvd.
Suite 500
Miami, Florida
305-438-2414
Fax: 305-573-5800

Randall C. Berg, Jr., Esq.
Fla. Bar No. 0318371
Joshua A.  Glickman, Esq.
Fla. Bar No. 43994
Shawn A. Heller, Esq.
Fla. Bar No. 46346

Florida Justice Institute, Inc.
100 S.E. 2nd Street
4320 Bank of America Tower
Miami, Florida  33131-2309
305-358-2081
Fax 305-358-0910
rberg@FloridaJusticeInstitute.org

By:  _____
Randall C. Berg, Jr., Esq.
Florida Bar No.  318371
Attorneys for the Plaintiffs

- 36 -

JS 44  (Rev. 2/08)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

FILED by ____ D.C.

JUL 17 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – MIAMI

**09 - 22087**

**I. (a) PLAINTIFFS**

GEORGINA DE LEON, MANUEL LOPEZ, AIDA FLORES and AIDA VILLARTA,

**DEFENDANTS**

HIALEAH HOUSING AUTHORITY, CARMEN MORALES, JULIO PONCE, ALICIA PEREZ, JOSE LUIS PANEPINTO, BENJAMIN

(b) County of Residence of First Listed Plaintiff   Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)

Randall C. Berg, Jr., Joshua A. Glickman, Shawn A. Heller, Florida Justice Institute, Inc., 100 S.E. Second St., Suite 4320, Miami, FL 33131 and Jeffrey Hearne, Sean Rowley, Legal Services of Greater Miami, Inc. 3000 Biscayne Blvd. Suite 500 Miami FL 33137

Attorneys (If Known)

CIV - GOLD        / McALILEY

(d) Check County Where Action Arose:  ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE
HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|

(For Diversity Cases Only)   and One Box for Defendant

| | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☑ 3  Federal Question (U.S. Government Not a Party) | Citizen of This State  ☐ 1  ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State  ☐ 2  ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a  ☐ 3  ☐ 3  Foreign Country | Foreign Nation | ☐ 6 | ☐ 6 |

09CV22087-GOLD/McALILEY

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☑ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Act | 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access to Justice |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO       b) Related Cases ☐ YES ☑ NO

JUDGE                                      DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Fourteenth Amendment of the United States Constitution; Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f, and the federal regulations governing the Section 8 Program, the Fair Housing Act

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  July 17, 2009

FOR OFFICE USE ONLY

AMOUNT $350          RECEIPT # 100481/IFP